JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
DANIEL N. ROJAS, CA Bar No. 326115
daniel.rojas@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendants
CARMAX AUTO SUPERSTORES, INC., CARMAX
FUNDING SERVICES, LLC, and CARMAX FUNDING
SERVICES II, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MARIO LANDAVERDE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARMAX AUTO SUPERSTORES, INC., a Virginia corporation; CARMAX FUNDING SERVICE, LLC, a Delaware limited liability company; CARMAX FUNDING SERVICE II, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive.<br><br>Defendants. | Case No. _____<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Notice of Related Cases; Declarations of Daniel N. Rojas, Tarun Mehta, Ashley Cullum, and Ariel Kumpinsky in Support of Removal]<br><br>Complaint Filed: November 13, 2023<br>Trial Date: None<br>District Judge: Hon. _____<br>Courtroom __, _____ |

1

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF JOSE MARIO LANDAVERDE AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendants CarMax Auto Superstores, Inc. ("CarMax Auto"), CarMax Funding Services, LLC ("CarMax Funding I") (erroneously sued as "CarMax Funding Service, LLC"), and CarMax Funding Services II, LLC ("CarMax Funding II") (erroneously sued as "CarMax Funding Service II, LLC") (collectively, "Defendants"), by and through the undersigned counsel, hereby remove the above-entitled action from the Superior Court of the State of California for the County of Orange to the United States District Court for the Central District of California under 28 U.S.C. § 1332(d) (the Class Action Fairness Act ["CAFA"]) and § 1446 because (1) Defendants are citizens of a state different than Plaintiff; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.  All CAFA requirements are satisfied.

The foregoing facts were true when Plaintiff filed his Class Action Complaint ("Complaint") and remain true as of the date of filing this Notice of Removal. Removal jurisdiction is therefore appropriate as detailed more fully below.

## I.    STATE COURT ACTION

1. Plaintiff filed his Complaint on November 13, 2023 in the Orange County Superior Court ("Action").  The Action was assigned Case No. 30-2023-01362649-CU-OE-CXC.  *See* Declaration of Daniel N. Rojas ("Rojas Decl."), ¶ 2; Ex. A (Complaint).  A copy of the Complaint is attached as **Exhibit A**.

2. Plaintiff's Complaint asserts: (1) Failure to Pay Overtime Wages; (2) Failure to Pay Minimum Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Breaks; (5) Waiting Time Penalties; (6) Wage Statement Violations; (7) Failure To Timely Pay Wages; (8) Failure to Reimburse Necessary Business

Expenses; (9) Failure to Pay Interest on Deposits; (10) Failure to Pay Out Vacation Time; and (11) Unfair Competition.

3.    Plaintiff served his Complaint on Defendants on December 12, 2023. Rojas Decl., ¶ 3, Ex. B (Proof of service).  A copy of the proof of service is attached as **Exhibit B.**

4.    On January 9, 2024, Defendants filed an Answer to Plaintiff's Complaint in the Orange County Superior Court.  *See* Rojas Decl., ¶ 4, Ex. C (Answer to Complaint).  A copy of the Answer is attached as **Exhibit C.**

5.    As further required by 28 U.S.C. § 1446(a), Defendants hereby provide this Court with copies of all process, pleadings, and orders received by Defendants in this action.  True and correct copies of the rest of the documents are attached as **Exhibit D** to this Notice of Removal.  *See* Rojas Decl., ¶ 5.  Defendants have not been served with any pleadings, process, or orders besides those attached.  *Id*.

6.    Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal.   *See* 28 U.S.C. § 1441(a); *see also McCabe v. General Foods Corp*., 811 F.2d 1336, 1339 (9th Cir. 1987).

## II.    REMOVAL IS TIMELY

7.    Under 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a), Defendants' deadline to remove the Action is January 11, 2024.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999).  This removal is timely.

## III.    REMOVAL IS PROPER UNDER CAFA

8.    CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which (1) any member of a class of plaintiffs is a citizen of a state different from any defendant; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of

interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes such removal under 28 U.S.C. § 1446.

9.      This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as class action wherein at least one member of the putative class is a citizen of a State different from Defendants, the number of individuals in the proposed classes in the aggregate is over 100, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

   **A.   CAFA's Diversity of Citizenship Requirement is Satisfied**

10.     <u>Citizenship of Plaintiff and putative class members</u>. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *See Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001).

11.     The Complaint alleges that "Plaintiff … is a resident of the County of Orange, State of California." Ex. A, ¶ 2.

12.     Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. Ex. A, ¶ 27; *see, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiff was somehow a citizen of Virginia or Delaware as Defendants are (and there is no evidence that he is), there is no possible way that the citizenship of hundreds of putative class members, all of whom worked in California (Ex. A, ¶ 27), were also citizens of Virginia or Delaware.

13.     <u>Citizenship of Defendants</u>. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court established the proper test for determining a

corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).  The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1184.  The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

14.     At all relevant times, CarMax Auto has been a citizen of Virginia.  First, CarMax Auto has been a company organized under the laws of Virginia.  *See* Declaration of Ashley Cullum ("Cullum Decl."), ¶ 3.  Second, CarMax Auto's principal place of business is in Virginia.  *See* Cullum Decl., ¶¶ 3, 4.  CarMax Auto's principal place of business is in Virginia because its headquarters are located there, and that is where CarMax Auto's executive management directs, controls, and coordinates its activities.  *Id.*  CarMax Auto's has not been incorporated in California and has not had its headquarters, executive offices, or principal place of business in California.  *See* Cullum Decl., ¶ 5.  Accordingly, CarMax Auto is a citizen of Virginia, and not a citizen of California.

15.     Limited liability companies are "unincorporated associations" under CAFA.  *See Jack v. Ring LLC*, 553 F. Supp. 3d 711, 715 (N.D. Cal. 2021); *see also Goddard v. Jubilant Hollisterstier, LLC*, 2023 WL 3020494, at *2 (E.D. Wash. Apr. 20, 2023) (same); *Lethgo v. CP IV Waterfront, LLC*, 2022 WL 2177125, at *6 (D. Haw. June 16, 2022) (same).

16.     For purposes of minimal diversity under CAFA, 28 U.S.C. § 1332(d)(10) provides that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."

17.     At all relevant times, CarMax Funding I has been a citizen of Delaware and Virginia.  First, CarMax Funding I has been a company organized under the laws

of Delaware. *See* Cullum Decl., ¶ 6. Second, CarMax Funding I's principal place of business is in Virginia. *See* Cullum Decl., ¶¶ 6, 7. CarMax Funding I's principal place of business is in Virginia because its headquarters are located there, and that is where CarMax Funding I's executive management directs, controls, and coordinates its activities. *Id.* CarMax Funding I has not been incorporated in California and has not had its headquarters, executive offices, or principal place of business in California. *See* Cullum Decl., ¶ 8. Accordingly, CarMax Funding I is a citizen of Delaware and Virginia, and not a citizen of California.

18.    At all relevant times, CarMax Funding II has been a citizen of Delaware and Virginia. First, CarMax Funding II has been a company organized under the laws of Delaware. *See* Cullum Decl., ¶ 9. Second, CarMax Funding II's principal place of business is in Virginia. *See* Cullum Decl., ¶¶ 9, 10. CarMax Funding II's principal place of business is in Virginia because its headquarters are located there, and that is where CarMax Funding II's executive management directs, controls, and coordinates its activities. *Id.* CarMax Funding II has not been incorporated in California and has not had its headquarters, executive offices, or principal place of business in California. *See* Cullum Decl., ¶ 11. Accordingly, CarMax Funding I is a citizen of Delaware and Virginia, and not a citizen of California.

19.    The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998).

20.    Minimal diversity is established because Plaintiff is a citizen of California and Defendant; it is a citizen of Connecticut and Delaware. Removal is therefore proper under 28 U.S.C. § 1332(d). *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

///

///

///

**B.   CAFA's Class Size Requirement Is Satisfied**

21.   In his Complaint, Plaintiff defines the proposed class as:

> [A]ll current and former non-exempt employees of Defendants within the state of California at any time commencing four (4) years proceeding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class.

Ex. A, ¶ 27.

22.   Defendants' employment records show that there are thousands of current and former non-exempt employees who fall within Plaintiff's proposed class. As of the date of removal, during the period of November 13, 2019 to December 23, 2023 (the "Applicable Period"), Defendants employed, in the aggregate, at least 5,153 non-exempt employees. *See* Declaration of Ariel Kumpinsky ("Kumpinsky Decl."), ¶ 5. Thus, CAFA's size requirement is satisfied.

**C.   CAFA's Requisite $5 Million Amount In Controversy Is Satisfied**

23.   Plaintiff has not alleged a specified amount in controversy in the Complaint. *See generally* Ex. A.

24.   In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

25.   In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims

of the absent class members" and attorneys' fees.  *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

26.    In alleging the amount in controversy for purposes of CAFA removal, Defendants do not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint.  Nor does Plaintiff concede that any or all putative class members are entitled to any recovery in this case, or are appropriately included in the Action. While Defendants deny the validity of Plaintiff's claims and requests for relief and do not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum.  *See Guglielmino*, 506 F.3d at 700.

27.    As described further below, as well as in the concurrently filed declaration from Ariel Kumpinsky,[1] the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

**1.    Defendants' Estimate of the Amount in Controversy**

28.    In determining the amount in controversy to support its Notice of Removal, Defendants rely on a conservative estimate based only on damages sought

_____

[1] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy.  *See, e.g.*, *Muniz*, 2007 WL 1302504, at *2, *5 (relying on

by Plaintiff in his Complaint as a result of the alleged: (1) Failure to Pay Overtime Wages; (2) Failure to Pay Minimum Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Breaks; (5) Waiting Time Penalties; and (6) Wage Statement Violations.  Because the amounts in controversy for these claims alone satisfy the jurisdictional minimum requirement of $5 million, Defendants do not include additional estimates of the amounts placed in controversy by Plaintiff's other allegations in the Complaint, including potential damages sought for the allegations of: (1) Failure To Timely Pay Wages; (2) Failure to Reimburse Necessary Business Expenses; (3) Failure to Pay Interest on Deposits; and (4) Failure to Pay Out Vacation Time.  *See generally* Ex. A; *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that when an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes).  That said, Defendants reserve the right to do so in opposition to any remand motion.

> (a)  **The amount placed in controversy by the overtime claim.**

29.    In his First Cause of Action, Plaintiff alleges that Defendants failed to pay putative class members for all overtime worked.  Ex. A, ¶¶ 14, 41.  Plaintiff further alleges the following with respect to his overtime wage claims:

---

the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

- "Defendants, at times, failed to pay overtime wages to Plaintiff and Class Members … in violation of California wage and hour laws …"  Ex. A, ¶ 14.
- "Defendants, at times, failed to pay overtime wages to Plaintiff and Class Members … by … failing to accurately track … all minutes actually worked …"  Ex. A, ¶ 14.
- "Defendants, at times, failed to pay overtime wages to Plaintiff and Class Members … by … engaging, suffering, or permitting employees to work off the clock …"  Ex. A, ¶ 14.
- "Defendants, at times, failed to pay overtime wages to Plaintiff and Class Members … by … requiring Plaintiff and Class Members to come early to work and leave [work late] without being able to clock in for all that time …"  Ex. A, ¶ 14.

30.    California Labor Code § 510 provides, *inter alia*, that any work in excess of 8 hours in a workday or 40 hours in a workweek shall be compensated at one and one-half times an employee's regular rate of pay.  Any work a non-exempt employee conducts over 12 hours in one day or 8 hours per day on the seventh consecutive day of work shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

31.    Based on Defendants' records, putative class members worked an aggregate of 429,918 workweeks during the Applicable Period.  *See* Kumpinsky Decl., ¶ 7.  The average hourly rate of the putative class members during the Applicable Period was $22.08.[2]  *Id*. at ¶ 12.

32.    Based on the above facts and allegations contained in Plaintiff's Complaint, Defendants' calculation of Plaintiff's claims for unpaid minimum wages

---

[2]    When calculating the amount in controversy for an overtime wages claim, courts routinely accept the use of average rates of pay.  *See, e.g., Hernandez v. Nuco2 Mgmt., LLC,* 2018 WL 933506, at *6-7 (E.D. Cal. Feb. 16, 2018) (holding that "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation"); *Taylor v. United Rd. Servs., Inc.,* 313 F. Supp. 3d 1161, 1179 (E.D. Cal. 2018) (same).

Case No.

is **$3,559,721.04** (($22.08 x 1.5) x 0.25 hour x 429,918 workweeks).  The computation of the amount in controversy is based on a conservative calculation that putative class members worked 15 minutes of unpaid overtime per week.

33.    Defendants' estimate is conservative and reasonable, especially in light of data reflecting that putative class members worked an average of 8.09 hours per shift, which suggests that any time "off-the-clock" would need to be paid at the overtime rate.  *See, e.g., Vasquez v. RSI Home Products, Inc.*, 2020 WL 6778772, at *6–*7 (C.D. Cal. Nov. 12, 2020) (assumption of 30 minutes of overtime per week was reasonable based upon evidence that class members worked on average 8.61 hours per day*); Torrez v. Freedom Mortgage, Corp.*, 2017 WL 2713400, at *4 (C.D. Cal. Jun. 22, 2017) (finding that assumption of three hours per week was reasonable); *Francisco v. Emeritus Corp.,* 2017 WL 2541401, at *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per workweek to be reasonable."); *Feao v. UFP Riverside, LLC,* 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) (approving of defendant's "measured" assumption that "each class member worked only one unpaid hour of overtime and missed only one hour of minimum wage work per work week"); *Ray v. Wells Fargo Bank, N.A.,* 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011) (allegation of "consistent overtime work" justified defendant's "reasonable and conservative" assumption that each class member was entitled to one hour of overtime per week).

34.    Consequently, the amount placed in controversy by the Unpaid Overtime Wages Claim, based on Plaintiff's allegations, is at least **$3,559,721.04** (($22.08 x 1.5) x 0.25 hour x 429,918 workweeks).

///

///

///

         **(b)**      **The amount placed in controversy by the minimum wage claim.**

35.     In his Second Cause of Action, Plaintiff alleges that Defendants failed to pay putative class members at least the minimum wage for all hours worked.  Ex. A, ¶¶ 15, 47. Plaintiff's Complaint alleges widespread and regularly-occurring instances of unpaid wages.  For instance, the Complaint contends that "Defendants have, at times, failed to pay minimum wages to Plaintiff and Class Members, … due to long lines for clocking in, [having] to complete pre-shift tasks before clocking in and post-shift tasks after clocking out …" Ex. A, ¶ 15.  The Complaint further alleges that "[Defendants] edit[ed] and/or manipula[ted] time entries to show less hours than actually worked.  Ex. A, ¶ 15.

36.     Labor Code Section 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

37.     Putative class members worked an aggregate of **at least 429,918** workweeks during the Applicable Period.  *See* Kumpinsky Decl., ¶ 7.  The average hourly rate of the putative class members was $22.08 per hour during this period. *See* Kumpinsky Decl., ¶ 12.

38.     Based on the above facts and allegations contained in Plaintiff's Complaint, Defendants' calculation of the amount placed in controversy based on Plaintiff's allegations in support of his claim for unpaid minimum wages is **at least $4,746,294.72** ($22.08 x 0.5 hour x 429,918 workweeks).  The computation of the amount in controversy is based on a conservative calculation that putative class members worked 30 minutes of unpaid straight time per week.

39.     An estimate of one hour of unpaid wages for every workweek has been accepted by the federal courts as a reasonable and conservative figure.  *See Kincaid v. Educ. Credit Mgmt. Corp.,* No. 2:21-CV-00863-TLN-JDP, 2022 WL 597158, at *3 (E.D. Cal. Feb. 28, 2022) (finding assumption of 1 hour of unpaid minimum wage per week was reasonable given the Complaint's lack of specific allegations to the contrary); *Kastler v. Oh My Green, Inc*., No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (stating that an assumption of 1 hour of unpaid minimum wage per week was a "conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations"); *Soto v. Tech Packaging, Inc.,* 2019 WL 6492245, at *5 (finding reasonable Defendant's assumption that the class members were not compensated for one hour of minimum wages per work week where plaintiff alleged a "pattern and practice" of wage abuse); *Soto v. Greif Packaging, LLC,* 2018 WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018) (finding allegation that defendant failed to pay minimum wage for all hours worked on a "consistent and regular basis" sufficient to support estimate of one hour per week per class member); *Patel v. Nike Retail Servs., Inc*., 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (approving one hour of unpaid wages "to be appropriately considered toward the amount in controversy").  This is especially the case where, as here, the plaintiff fails to provide specific allegations concerning the frequency of which he worked unpaid wages without being provided the requisite compensation.  *See Byrd v. Masonite Corp*., No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

40.     Consequently, the amount placed in controversy by the allegations by Plaintiff in support of his Minimum Wage Claim is at least **$4,746,294.72**.

///

///

///

**(c)     The amount place in controversy by the failure provide meal periods claims.**

41.     In his Third Cause of Action, Plaintiff alleges that Defendants failed to provide putative class members with meal periods or premium payment in lieu thereof.  Ex. A, ¶¶ 16 and 54.  Plaintiff further alleges the following with respect to his meal period claims:

- "Defendants have, at times, failed to provide Plaintiff and Class Members, or some of them, full, timely, thirty (30) minute uninterrupted meal periods … as required by California wage and hour laws."  Ex. A, ¶ 16.

- "Plaintiff and Class Members were, at times, not provided complete, timely 30-minute, duty free uninterrupted meal periods …"  Ex. A, ¶ 54.

42.     Under California law, employees who are not provided meal periods are entitled to one hour of premium pay for each day that a meal period is not provided.  Labor Code § 226.7(c).   Meal period claims are properly considered in determining the amount in controversy.  *See, e.g., Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019); *Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

43.     When determining the amount placed in controversy by a plaintiff's allegations regarding a common "policy" or "practice" of meal period violations like those alleged by Plaintiff in the Complaint, an estimate of a 20% meal period violation rate is both reasonable and conservative.  *See Chavez*, 2019 WL 1501576, at *3 ("Courts in this Circuit, including in this [Northern] District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods; collecting cases); *Hender v. Am. Directions Workforce LLC*, 2020 WL 5959908 *2 (E.D. Cal. Oct. 7, 2020) (finding a 20% violation rate reasonable when a plaintiff "claims a 'policy and practice' of denying employees

meal and rest breaks"); *Trigueros v. Stanford Fed. Credit Union*, 2021 WL 2649241, at *3 (N.D. Cal. June 28, 2021) (same.); *Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) (same); *Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (approving one missed meal period per week as "reasonable" in light of policy or practice allegations).

44.    Based on a review of Defendants' business records, during the Applicable Period, the putative class members worked an aggregate of **1,728,647** shifts that exceeded six hours in length and received an average hourly rate of at **$22.08**.  *See* Kumpinsky Decl., ¶¶ 9, 12.

45.    Based on a conservative analysis using a 20% violation rate, Defendants' calculation of Plaintiff's claim for failure to provide legally compliant meal periods is $7,633,705.15.  The computation of the amount in controversy is based on conservative calculations that during the Applicable Period, putative class members worked 1,728,647 shifts that exceeded six hours in length, that there was a 20% meal period violation rate, and each putative class member earned an average hourly rate of $22.08.[3]  *See* Kumpinsky Decl., ¶¶ 9, 12.

46.    Consequently, the amount placed in controversy by the Meal Period Claim is **$7,633,705.15** ($22.08 x 1,728,647 shifts x 0.2).

///

///

///

///

---

[3]    Relying on the average hourly rate of pay is well-accepted for calculating the amount placed into controversy for meal and rest period claims.  *See, e.g., Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *2 (C.D. Cal. Apr. 9, 2019) (meal and rest); "[T]he average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation; *Hernandez v. Nuco2 Mgmt., LLC*, 2018 WL 933506, at *5 (E.D. Cal. Feb. 16, 2018) (holding that "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation").

Case No.

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

(d)    **The amount placed in controversy by the failure to provide rest breaks claim.**

47.    In his Fourth Cause of Action, Plaintiff alleges that Defendants failed to provide putative class members with rest breaks or premium payment in lieu thereof. Ex. A, ¶¶ 17 and 62.

48.    Plaintiff alleges regular and systemic failures to provide rest periods:

•    "Defendants have, at times, failed to authorize and permit Plaintiff and Class Members, or some of them, to take rest periods … as required by California wage and hour laws."  Ex. A, ¶ 17.

•    "Plaintiff and Class Members were, at times, not authorized or permitted to take complete, timely 10-minute, duty free uninterrupted rest periods …"  Ex. A, ¶ 62.

49.    Under California law, employers must provide at least one 10-minute rest period for shifts 3.5 hours or greater. *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1029 (2012).  Employees who are not provided the opportunity to take a rest period are entitled to one hour of premium pay for each day that the opportunity to take a rest period is not provided. *See United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011).  Rest period claims are properly considered in determining the amount in controversy. *See, e.g., Arias v. Residence Inn by Marriott*, 936 F.3d 920, 926-27 (9th Cir. 2019).

50.    Based on a review of Defendants' business records, during the Applicable Period, the putative class members worked an aggregate of **1,870,885** shifts that exceeded 3.5 hours in length and received an average hourly rate of at **$22.08**.   Kumpinsky Decl., ¶¶ 10, 12.

51.    Based on a conservative analysis using a 20% violation rate, Defendants' calculation of Plaintiff's claim for failure to provide legally compliant rest periods is $8,261,828.16.  The computation of the amount in controversy is based on conservative calculations that during the Applicable Period, putative class

members worked 1,870,885 shifts that exceeded 3.5 hours in length, that there was a 20% rest period violation rate, and each putative class member earned an average hourly rate of $22.08.  Kumpinsky Decl., ¶¶ 10, 12.

52.    Courts accept an assumed 100% rest period violation rate when there are allegations of widespread failures to provide rest periods, as there are here.  *See, e.g., Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015) (accepting a 100% rest period violation rate where plaintiff "alleges that 'at all material times,' Defendant failed to provide putative class members with uninterrupted meal and rest periods"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (approving 100% rest period violation rate where Plaintiff alleges that Defendant maintained uniform policies, practices, and procedures that caused violation of California's rest period laws"); *Dawson v. Hitco Carbon Composites, Inc.*, 2016 WL 7235629, at *4 (C.D. Cal. Dec. 14, 2016) (approving 100% rest period violation rate based on allegation that "[a]t all material times," Defendant failed to provide the requisite uninterrupted meal periods and rest periods"); *Feltzs v. Cox Commc'ns Cal., LLC*, 2020 WL 133687, at *4 (C.D. Cal. Jan. 13, 2020) (finding allegations of "consistently" violating meal periods supported a 100% rate).

53.    Nonetheless, and even though the Complaint contends that "Defendants have … failed to authorize and permit Plaintiff and Class Members, or some of them, to take rest periods … as required by California wage and hour laws," Defendants conservatively assume a 20% rest period violation rate.

54.    Consequently, the amount placed in controversy based on Plaintiff's allegations in support of his Rest Period Claim is at least **$8,261,828.16** ($22.08 x 1,870,885 shifts x 0.2).

///

///

///

17

Case No.

1
2

**(e)    The amount placed in controversy by the waiting time penalty claim.**

3    55.    In his Fifth Cause of Action, Plaintiff alleges that "Defendants have, at

4    times, failed to pay Plaintiff and Class Members, or some of them, the full amount of

5    their wages owed to them upon termination and/or resignation as required by

6    California wage and hour laws."  Ex. A, ¶ 18.

7    56.    Section 203 penalties "accrue not only on the days that the employee

8    might have worked, but also on nonwork days," for up to 30 days, and the accrual of

9    these penalties "has nothing to do with the number of days an employee works

10   during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998).  As the

11   "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that

12   wrong "continues so long as payment is not made"; therefore, "[a] proper reading of

13   section 203 mandates a penalty equivalent to the employee's daily wages for each

14   day he or she remained unpaid up to a total of 30 days." *Id*. at 493.

15   57.    Given the allegations of Plaintiff's Complaint, it is reasonable to

16   calculate the amount in controversy for this claim based on a 30-day penalty

17   calculated at putative class members' daily wage rate.  *See, e.g., Mackall v.

18   Healthsource Global Staffing, Inc*., 2016 WL 4579099, at *5-*6 (N.D. Cal. Sept. 2,

19   2016) (approving 100% violation rate in calculating waiting time penalties on

20   removal which are based on allegation that Defendant had a "pattern and practice" to

21   not pay overtime wages due; *De Vega v. Baxter Healthcare Corp*., 507 F. Supp. 3d

22   1214, 1218 (N.D. Cal. 2019) (holding that assumed maximum waiting time penalties

23   "was completely reasonable"; "If the gravamen of the allegation were that Baxter

24   was sometimes tardy in providing final paychecks, then indeed it would not be

25   reasonable to assume that nearly all employees did not get their final paychecks for

26   30 or more days. De Vega's theory, however, plainly is that putative class members

27   were owed (and are still owed) pay for overtime and missed meal and rest breaks,

28   even if their final paychecks were otherwise timely delivered.  Thus, it is completely

18    Case No.

reasonable to assume waiting time penalties accrued to the thirty-day limit because of those unpaid sums"); *Ford v. CEC Entm't, Inc*., 2014 WL 3377990 (N.D. Cal. July 10, 2014) (same; CAFA amount in controversy satisfied in part by waiting time penalties; "Assuming a 100% violation rate is thus reasonably grounded in the complaint....Because no averment in the complaint supports an inference that these sums were ever paid, Ford cannot now claim class members may be awarded less than the statutory maximum."); *Garza v. Brinderson Constructors, Inc*., 178 F. Supp. 906, 912 (N.D. Cal. 2016) (approving assumption on removal that each employee would be entitled to maximum statutory penalty for 30 days).

58. Based on a review of Defendants' business records, at least **2,368** non-exempt California employees have separated employment with Defendants during the relevant statutory period of November 13, 2020 forward. *See* Kumpinsky Decl., ¶ 6. These employees earned an average base hourly rate of **$22.65** and worked an average shift length of **8.08 hours**, which is equal to a daily rate of pay of at least $**183.01**.[4] *See* Kumpinsky Decl., ¶¶ 8, 12.

59. Defendants' calculation of Plaintiff's claim for waiting time penalties for failure to timely pay all wages upon termination results in exposure of **$13,001,172.48** ($183.01 average daily rate x 30 days x 2,368 former employees).

60. Consequently, the amount placed in controversy by the waiting time penalties claim is $13,001,172.48.

**(f)    The amount placed in controversy by the failure to provide accurate wage statements.**

61. Plaintiff alleges that Defendants failed to provide accurate wage statements as required by California Labor Code section 226 *et seq*. Ex. A, ¶¶ 19,

---

[4]     For purposes of removal, Defendants utilized only the average straight time rate when calculating the daily wage rate. Since putative class members worked 8.08 hours during the relevant statutory period of November 13, 2020 forward, Defendants could have factored in the average overtime rate ($33.98) for 0.08 hours. Though Defendants conservatively used the lower rate, it reserves the right to utilize higher figures if challenged on remand.

77.  Specifically, Plaintiff alleges that "Defendants failed to comply with Labor Code section 226, subdivision (a) by adopting policies and practices that resulted in their failure, at times, to furnish Plaintiff and Class Members with accurate itemized statements …" *Id*. at ¶ 77.

62.    Plaintiff asserts that as a result of Defendants' alleged failure to provide wage statements in compliance with California law, Plaintiff and the putative class are entitled to statutory penalties pursuant to Labor Code § 226.  Ex. A, ¶ 81.

63.    Section 226(e) provides penalties for inaccurate wage statements as follows: the "greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)[.]"

64.    An estimated 100% wage statement violation rate for purposes of removal is reasonable in light of the allegations in Plaintiff's Complaint.  *See, e.g., Baker v. Propak Logistics*, Inc., 2019 WL 4168998, at *4 (C.D. Cal. Sept. 3, 2019); *Mendoza v. Nat'l Vision, Inc*., 2019 WL 2929745, at *6 (N.D. Cal. July 8, 2019) (approving of 100% wage statement violation rate where plaintiff's complaint alleged that "throughout the relevant period," Defendant "issued "wage statements [that] inaccurately report the number of hours worked, the number of overtime hours worked, gross wages earned, net wages earned and deductions"); *Gipson v. Champion Home Builders, Inc.*, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable based on reasonable assumption that class members suffered at least one violation of meal or rest break violations per pay period).

65.    Defendants' conservative calculation of Plaintiff's claim for non-compliant wage statements is $6,976,100.00.  Based on a review of Defendants' business records, Defendants employed 3,420 putative class members who were

issued a total of 71,471 wage statements during the one year limitations period from November 13, 2022 to the present.  *See* Kumpinsky Decl.¶ 11.

66.     Consequently, the amount placed in controversy by the Inaccurate Wage Statement claim is at least **$6,976,100.00** (**3,420** number of putative class members **x $50**) + (**71,471** (wage statements issued during one-year limitations period) **– 3,420** (number of 1-year putative class members)) x **$100**).

### (g)     Summary of Defendants' calculations.

67.     As described above, a conservative estimate of the amount in controversy presented by Plaintiff's minimum wage, overtime wage, meal period, rest break, waiting time penalty, and wage statement claims exceed the jurisdictional minimum of $5,000,000.  These claims have placed at least $44,178,821.55 in controversy, summarized as follows:

| Claim | Estimated Exposure |
|---|---|
| Overtime | $3,559,721.04 |
| Minimum Wage | $4,746,294.72 |
| Meal Period | $7,633,705.15 |
| Rest Period | $8,261,828.16 |
| Waiting Time Penalty | $13,001,172.48 |
| Wage Statement | $6,976,100.00 |
| **Total** | **$44,178,821.55** |

68.     Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## IV.   DEFENDANTS HAVE SATISFIED THE REMAINING REMOVAL REQUIREMENTS

69.     <u>Venue is Proper</u>.  In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending.  The Superior Court of the State of California for the County of Orange is located within the Central

District of California.  Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

70.    In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendants are attached as Exhibits to this Notice.

71.    In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Orange.  Notice of compliance shall be filed promptly afterward with this Court.

72.    As required by Federal Rule of Civil Procedure rule 7.1, Defendants have concurrently filed their Certificate of Interested Parties and Disclosure Statement.

73.    Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendants request that the Court issue an Order to Show Cause so that Defendants may have an opportunity to more fully brief the basis for this removal.

WHEREFORE, Defendants remove this action to this Court.


DATED: January 11, 2024            OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: _____
    Jack S. Sholkoff
    Daniel N. Rojas

Attorneys for Defendants
CARMAX AUTO SUPERSTORES, INC.,
CARMAX FUNDING SERVICES, LLC, and
CARMAX FUNDING SERVICES II, LLC